PIERSON W. McNAIL

v.

ANDREW WELCH.

*Mortgages — Foreclosure — Note — Alteration — Payment—Evidence— Usury.*

Upon a bill to foreclose a mortgage, it is *held:* That the admissions contained in the answer to the original bill touching an addition made to the secured note, are competent evidence in favor of the complainant; and that the finding of the court below upon the issues of alteration and payment was justified by the evidence.

[Opinion filed January 4, 1888.]

IN ERROR to the Circuit Court of Washington County; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. J. M. DURHAM, for plaintiff in error.

Messrs. POLLOCK & POLLOCK, for defendant in error.

GREEN, P. J. The original bill in this case was filed by defendant in error on March 24, 1886, to foreclose a mortgage executed by plaintiff in error May 10, 1882, alleged to have been given to secure a note of that date for $1,250, signed by said Pierson W. McNail, payable to Welch in three years with eight per cent. interest annually, and if not paid within three days after due, then two per cent. damages for non-payment. To this bill defendant answered April 5, 1886, admitting execution, acknowledgment and delivery of mortgage, and the execution and delivery of the note as alleged, but denying said McNail was then indebted to Welch, averring the fact to be that about fifteen years before, McNail was indebted to Welch in the sum of $1,000, for which sum Welch held notes of McNail with other persons as security, on which, in the fall of 1879, there was due the principal and about

McNail v. Welch.

$125 interest; that at that time $1,010 was paid on those notes by defendant's son to the complainant; that defendant McNail did not know of said payment until about February 1, 1886, and in ignorance of such fact he and complainant computed the interest on the notes on which said $1,010 had been paid, but not credited, and he, McNail, then executed and delivered said note for $1,250 to complainant in place of the old notes, and in said answer it is further averred said note contains this clause: "If this note is not paid within three days after due then two per cent. damages for non-payment;" and that said clause is a corrupt, usurious agreement, in violation of Sec. 6, of Chap. 74, Revised Statutes of the State of Illinois, Act of 1879.

The cause was first heard in the Circuit Court at the April term, 1886. A decree for complainant was entered. On writ of error to this court, at the August term, 1886, that decree was reversed, and the cause was remanded, there being a discrepancy between proof as to the payments and credits therefor as indorsed on the note.

At the April term, 1887, of said Circuit Court, defendant, by leave of the court, filed an amended answer, alleging the payment of indebtedness as before, and also that the note in suit was altered after its execution, without the consent of the maker, by adding the clause, "if not paid within three days after due two per cent. damages for non-payment." Thereupon complainant, by leave of the court, amended his bill by alleging said addition to the note was made by complainant with the consent of the maker. Upon the hearing the court below found for the complainant upon the issue of payment and of alterations, found amount due complainant on the note to be $1,000, found the clause allowing damages for non-payment within three days after due to be usurious, and therefore no interest on the principal sum could be recovered and entered a decree for complainant for $1,000 on the finding. To reverse this decree, plaintiffs in error sued out this writ.

The theory of counsel for respective parties is that in this case the questions necessary to be determined by us in order to properly decide it are these questions of fact: First,

was the addition to the note of the clause, "if not paid within three days after due, two per cent. damages for non-payment," made after its execution without the consent of Pierson W. McNail? Second, was the $1,010, claimed to have been paid complainant on the old note for $1,000 by William McNail, ever, in fact, paid?

It is admitted complainant added the clause mentioned to the note. and did so probably after McNail signed it, and the only witnesses testifying as to the execution were Welch, Pierson W. McNail and Martin; the testimony of these witnesses, by itself, would not establish the material fact that the addition to the note made by Welch was made with the consent of McNail, but the answer to the original bill also furnishes evidence that he did give such consent.   Counsel for plaintiffs in error insist that the answer ought not to be taken into consideration, and that McNail's admissions therein are not competent evidence against him; but when it appears, as in this case, McNail, with knowledge the mortgage note contained the addition complained of now, joined with his co-defendant in the answer admitting the execution thereof by himself, and in the shape as described in the original bill, claimed the benefit of that clause as furnishing grounds for the defense of usury, adhered to that answer through the entire proceedings up to the April term, 1887, there can be no doubt, we think, the admissions in the answer were competent evidence.   Robbins v. Butler, 24 Ill. 387; Miller v. Chrisman, 25 Ill. 242.

These admissions and the evidence of Welch outweigh the testimony of McNail, and establish, by a preponderance, the fact that the addition to the mortgage note was made with the consent of McNail.   It might also be suggested in this connection, if he had not given such consent, but upon discovering the alteration (as he says he did not at the time the suit was commenced) made no objection thereto, but remained silent when he was called on to speak, and he and his co-defendant by their answer adopted the note, with the addition of the damage clause, as the act of McNail, and based the defense of usury on that clause, the alteration would be ratified and defendants below ought not afterward to be permitted to deny such ratification.

The only payment claimed to have been made complainant, exclusive of the credits on the mortgage note, is a payment of $1,010 in November, 1878, which William McNail testified he then made on an old note for $1,000, which note was afterward delivered up by Welch to P. W. McNail and formed a part of the consideration of the mortgage note. William McNail testified that in November, 1878, his father, P. W. McNail, told him he had promised to pay Mr. Welch $1,000, and to look for him; and he took the money out of the safe in his father's house—his father was sick in the house and could not see him take the money—hitched up to a spring wagon and, in company with his brother James and Charles Lane, drove to Welch's, and told him what he came for. "He said all right. I counted out $1,010. It had a sack string around it. My father had told me it was $1,000 at the hog pen. I counted out $1,010 to Welch. He took it, said he would go to the house, put up team, warm up and count the money, and if it counted out all right he would bring up the note; first time I told father about this was in February, 1886."

James McNail testified substantially like William as to what took place at Welch's, except he says Welch left his wagon and came to the buggy and William counted out the money to him; counted it twice. "William did not leave the buggy; counted the money in the buggy. Welch stood by fore wheel when it was counted, brother at my left, and I was between him and Lane."

Charles Lane testified he went with William and James McNail to Welch's. William handed Welch some money. "He left James and I in the wagon; did not see any money counted; do not know how much money or for what purpose it was paid."

Complainant Welch testified he had no recollection of having received or credited any amount of money on the $1,000 note; denies positively the payment to him of $1,010 by William McNail; says the first he ever heard of this claim of payment was in March, 1886; never received $1,000 at a time since he lived in the State, except when he sold a big bunch of stock.

John Blankenship, for complainant, testified he was at work for Welch on the occasion when this payment is claimed to have been made, saw the parties when they came; that William McNail got off the spring wagon, came to wagon where witness and Welch were, told Welch he had come to pay him some money for interest, took money out of his pocket, paid Welch $110 paper money, two fifty dollar bills and one ten dollar bill. Counsel for plaintiffs in error direct our attention to discrepancies between the testimony given by this witness at the first and last hearing, and insist such discrepancies require us to disregard, or give but little weight to, his testimony. An examination of the record does not sustain the criticism, and the proof made by the testimony above mentioned would seem to be equally balanced as to the material fact of payment alleged and set up as a defense. That fact was not merely that William McNail paid Welch something on the old note, but that the payment so made to Welch was the sum of $1,010. Two witnesses affirm such payment was made and two witnesses deny that to be the fact. It further appears P. W. McNail, who told his son, as the latter testifies, to hunt up Welch and pay him $1,000, made no inquiry and never asked that son about the matter, never inquired what had become of the roll of money taken from the safe and which he had told the son contained the $1,000, and which the son says he paid to Welch, did not ask Welch if he had been paid the promised $1,000, but said nothing about the matter during all the years from 1878 up to March, 1886, although he frequently met Welch and did business with him, and in March, 1886, after he knew of this payment, as he testifies, he offers to give Welch a deed to the mortgaged property and made no mention of the payment, and told the witness, Patton, he expected to deed the house to Welch and would exercise his influence with Welch to have him permit Patton to remain in the house. William McNail says he did not tell his father about the payment until February, 1886; that he saw Welch frequently after the time he claims to have made the payment, and Welch promised to bring up the note; never asked for the note or said anything to Welch about it

or the payment of $1,010 to him until March, 1886, and never told his father he had taken the roll of money from the safe.

The court below, in determining the question whether the payment claimed had, in fact, been made to Welch, doubtless took into consideration with the other testimony the conduct and declarations of P. W. McNail and his son William, and found such conduct and declarations to be irreconcilable with the claim of payment.   The finding of the Circuit Court upon the issues of alteration and payment was justified by the evidence, and its finding that the clause added to the note created a usurious contract and no interest could be recovered, and the $250 paid should be applied on the principal, leaving but $1,000 due complainant, was also right.   We find no error in the record requiring the reversal of the decree of the court below, and it is affirmed.

*Decree affirmed.*